**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
*Attorneys for Plaintiff,*
*Selective Insurance Company of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>-against-<br><br>JM CLARK CONSTRUCTION, LLC and JOHN M. CLARK,<br><br>Defendants. | Civil Action No.<br><br><br><br>**VERIFIED COMPLAINT** |

Plaintiff, Selective Insurance Company of America ("Selective"), by way of Verified Complaint against Defendants, JM Clark Construction, LLC and John M. Clark (collectively, "Defendants" or "Indemnitors"), alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper in the District of New Jersey pursuant to the "Suits and Proceedings" provision recited in the contract between the parties stating that all Defendants "submit to the jurisdiction of the state and federal courts situate[d] in New Jersey, waiving any

defenses of lack of personal jurisdiction and waiving venue arguments, including forum non convenience in any action brought by [Selective] in the State of New Jersey."

## PARTIES

3. Plaintiff, Selective, is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Branchville, New Jersey.

4. Upon information and belief, Defendant, JM Clark Construction, LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, and has its principal place of business at 828 Hamilton Corners Road, Titusville, Pennsylvania 16354.

5. Upon information and belief, Defendant, John M. Clark, is an individual residing at 828 Hamilton Corners Road, Titusville, Pennsylvania 16354.

## GENERAL ALLEGATIONS

### I. THE INDEMNITY AGREEMENT

6. On January 17, 2018, in consideration for and to induce Selective, as surety, to issue bonds on behalf of JM Clark Construction, LLC ("JMC"), as principal, JMC and John M. Clark (collectively, the "Indemnitors") executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Selective, as indemnitee. A true and accurate copy of the Indemnity Agreement is annexed hereto as **Exhibit A.**

7. Pursuant to the Paragraph Three of the Indemnity Agreement, the Indemnitors, jointly and severally, agreed to, among other things:

> [E]xonerate, indemnify and save harmless [Selective] (and any surety that [Selective] procures to execute any Bond and any other surety with which [Selective] may act as co-surety on any Bond or other instrument) from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys,

2

> consulting, accounting and other professional and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis (including the cost of in-house professionals) which [Selective] may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement or, (3) in enforcing any of the promises, covenants or conditions of this Agreement[.]

[Ex. A, ¶ 3].

8. In Paragraph Three of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon . . . made by [Selective] under [Selective]'s belief that (1) [Selective] was or might be liable therefor or (2) the payments were necessary or advisable to protect any of [Selective]'s rights or to avoid or lessen [Selective]'s liability or alleged liability[.]

[Id.].

9. Paragraph Three of the Indemnity Agreement further states that the Indemnitors agreed, jointly and severally, that:

> Payment by reason of the aforesaid causes shall be made by the Indemnitors to [Selective] . . . as soon as liability exists or is asserted against [Selective], whether or not [Selective] shall have made any payment therefor.

[Id.].

10. Pursuant to Paragraph Three of the Indemnity Agreement, the Indemnitors also agreed that:

> …vouchers or other evidence of such payments sworn to by a duly authorized representative of [Selective] shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to [Selective].

[Id.].

11. Pursuant to Paragraph Four of the Indemnity Agreement, when Selective establishes a reserve for any surety bond issued on behalf of JMC, the Indemnitors agreed, jointly and severally, to:

> . . . immediately upon demand (the "Collateral Demand"), whether or not [Selective] shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to [Selective], shall provide to [Selective] . . . funds and/or other collateral security, which [Selective] in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond[.]

[Id. at ¶ 4.].

12. Pursuant to Paragraph Four of the Indemnity Agreement, the Indemnitors further agreed, jointly and severally, that:

> . . . If the Indemnitors fail to provide [Selective] with sufficient collateral after a Collateral Demand, they shall be in default of this Agreement. **Indemnitors agree that their failure to provide collateral as demanded by [Selective] shall constitute irreparable harm to [Selective] for which it has no adequate remedy at law and that [Selective] may obtain injunctive relief compelling the delivery to [Selective] of sufficient collateral** or in the alternative, [Selective] may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorneys fees by any legal or equitable process. Any Collateral Demand reduced to a judgment may be immediately executed upon and any asset of an Indemnitor levied upon may either be held as collateral or liquidated in any manner deemed appropriate by [Selective], including private or judicial sale. The proceeds of such liquidated assets may be held by [Selective] as collateral and applied to any of the Indemnitors' obligations to [Selective] arising under this Agreement or otherwise.

[Id. (Emphasis added)].

13. Pursuant to Paragraph Ten of the Indemnity Agreement, the Indemnitors further agreed that:

> If any of the Bonds or other instruments are executed by [Selective] in connection with the performance of a contract, the entire contract price or other consideration to be received by an Indemnitor, whether received as payments or loans, shall be dedicated to the satisfaction of the conditions of the Bond(s) or other instrument(s). All consideration, including all funds paid, due or to become due and all securities, warrants, checks or other evidence of indebtedness and the proceeds thereof, given upon or under any contract in connection with which [Selective] shall have issued a Bond shall be impressed with a trust in favor of and for the benefit of laborers, materialmen, suppliers, subcontractors and [Selective] for the exclusive purpose of satisfying the conditions of the Bonds. In the event of a default by any Indemnitor in the performance or compliance with any promise, covenant or obligation under this agreement, the [Selective] may demand and the Indemnitors shall cause all funds or the proceeds of all consideration received or to be received from any contract referred to in any Bond to be deposited into separate trust accounts with a bank or similar depository designated by [Selective] and such accounts shall be controlled by an escrow agent to be designated by [Selective].
>
> [Id. at ¶ 10.].

14. Pursuant to Paragraph 12 of the Indemnity Agreement, the Indemnitors further agreed that they shall:

> . . . have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Surety, at any time, shall have continuous and uninterrupted access to the books, records, accounts and nonconsumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety and the financial condition, credit worthiness and assets of any Indemnitor until the liability of Surety under each and every Bond or other instrument executed by it and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety.

## II. SELECTIVE ISSUES BONDS ON BEHALF OF JMC

15. JMC, at all relevant times, was engaged in the construction contracting business.

16. JMC was required to provide surety bonds in connection with certain of its construction contracts.

17. Following execution of the Indemnity Agreement, Selective, as surety, issued, among others, the following the bonds (the "Bonds") on behalf of JMC, as principal:

| Bond Number | Issue Date | Obligee | Project | Bond Type | Penal Sum |
|---|---|---|---|---|---|
| B1209075 | 11.30.2018 | Rankin Christian Center | Renovations to the RCC Phase I | Performance and Payment Bonds | $306,965.00 |
| B1207467 | 10.16.2018 | Richland Twp. Mun. Authority | Addition and Site Improvements to RTMA | Performance and Payment Bonds | $836,500.00 |
| B1203385 | 06.29.2018 | Marshall Twp. | Altmyer Barn Renovations | Performance and Payment Bonds | $555,948.00 |
| B1201413 | 05.15.2018 | Mount Pleasant Twp. | Public Works Building Addition | Performance and Payment Bonds | $305,500.00 |
| B1203349 | 01.24.2019 | Franklin Twp. Supervisors | Maintenance Building Addition | Performance and Payment Bonds | $659,000.00 |
| *Combined Penal Sums* | | | | | **$2,663,913.00** |

18. True and accurate copies of the Bonds are annexed hereto as **Exhibit B.**

## III. CLAIMS ASSERTED AGAINST THE BONDS

19. Following the issuance of the Bonds, Selective received the following payment bond claims (the "Payment Claims") from JMC's subcontractors:

| Claimant Name | Obligee | Bond Number | Claim Number | Claim Amount |
|---|---|---|---|---|
| Sunbelt Rentals | Marshall Twp. | B1203385 | 21965971 | $4,711.01 |
| Graham Outdoor Services | Marshall Twp. | B1203385 | 21965971 | $21,875.00 |
| Oil City Metal Roofing | Marshall Twp. | B1203385 | 21965971 | $25,102.17 |
| Neff Specialties | Marshall Twp. | B1203385 | 21965971 | $11,120.80 |
| Eric Pomaybo | Marshall Twp. | B1203385 | 21965971 | $6,330.32 |
| Carter Lumber | Marshall Twp. | B1203385 | 21965971 | $61,225.81 |

6

| Menno Brenneman | Franklin Twp. Supervisors | B1203349 | 21965994 | $29,542.26 |
| Oil City Metal Roofing | Franklin Twp. Supervisors | B1203349 | 21965994 | $136,450.39 |
| Integrated Garage Door System | Franklin Twp. Supervisors | B1203349 | 21965994 | $18,247.00 |
| *Total Amount of Payment Bond Claims to Date* | | | | $314,604.76 |

### IV. SELECTIVE'S DEMAND FOR COLLATERAL

20. As a result of the Payment Claims, and pursuant to Paragraph 4 of the Indemnity Agreement, Selective posted a reserve in the amount of $314,605.00 to cover its loss exposure under the Bonds (the "Reserve").

21. Pursuant to Paragraph 4 of the Indemnity Agreement, by letter dated May 15, 2019, Selective demanded that the Indemnitors post with Selective collateral security in the amount of $314,605.00 by no later than the close of business on May 22, 2019 (the "Collateral Demand"). A true and accurate copy of the Collateral Demand letter is annexed hereto as **Exhibit C**.

22. To date, and despite demand, the Indemnitors have failed to, among other things, deposit collateral, in the respective amount demanded, with Selective.

23. Because of the Indemnitor's failure to comply with their contractual obligation to deposit the demanded collateral security, Selective is exposed to liability under the Bonds, and the Indemnitors are in material breach of their joint and several obligations under the Indemnity Agreement.

## FIRST COUNT

### SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT TO ENFORCE SELECTIVE'S DEMAND FOR COLLATERAL SECURITY

24. Selective repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

25. Under the terms of the Indemnity Agreement, the Indemnitors agreed, among other things, to deposit with Selective an amount of money equal to the Reserve set by Selective in connection with the Bonds and to provide collateral as security for the full performance of the Indemnity Agreement.

26. In connection with the Payment Claims, Selective established the Reserve in the amount of $314,605.00.

27. By the Collateral Demand, Selective demanded that the Indemnitors deposit collateral with Selective in the amount of the Reserve, $314,605.00.

28. To date, the Indemnitors have failed and refused to deposit collateral with Selective as security for the full performance of the Indemnity Agreement.

29. Pursuant to the Paragraph Four of Indemnity Agreement, the Indemnitors agreed, jointly and severally:

> **that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law and that Surety may obtain injunctive relief compelling the delivery to Surety of sufficient collateral** or in the alternative, Surety may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorneys fees by any legal or equitable process.
>
> [See Ex. A, ¶ 4 (emphasis added)].

30. By failing to deposit collateral security, the Indemnitors have failed to fulfill their joint and severally obligations under the Indemnity Agreement, and therefore, have breached the Indemnity Agreement.

31. By reason of the foregoing breach of the Indemnity Agreement, Selective has suffered, and will continue to suffer, injury and damage for which there is no adequate remedy at law.

**WHEREFORE**, Selective demands judgment against the Indemnitors, jointly and severally, for specific performance as follows:

(a) Restraining and enjoining the Indemnitors and their agents from transferring, encumbering or otherwise disposing of, and from concealing and secreting any of their property and assets, real, personal and mixed, whether jointly or solely owned, which might serve as collateral so as to secure Selective from liability herein until proof of record satisfactory to the court is presented to establish that all claims to which Selective is exposed have been liquidated and discharged;

(b) Ordering and directing the Indemnitors, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf, to immediately deposit collateral in the amount $314,605.00, the amount of the Reserve set by Selective;

(c) Requiring the Indemnitors to render to Selective a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

(d) Requiring the Indemnitors to allow Selective full and complete access to all financial books, records, documents and accounts maintained by them or any one of them in which they may have an interest;

(e) Awarding Selective such other and further relief as the court deems just, equitable and proper;

(f) Awarding Selective damages in an amount equal to any and all liability, loss, cost, expense, and attorneys' fees incurred or to be incurred by Selective as a result of its having executed the Bonds, together with the appropriate interest thereon; and

(g) Awarding Selective reasonable attorneys' fees, costs of suit, interest, and any other relief that the Court deems just and proper.

## SECOND COUNT

### SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT TO INSPECT BOOKS AND RECORDS

32. Selective repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

33. Pursuant to the terms of the Indemnity Agreement, until Selective's liability under the Bonds is discharged, Selective shall have the right to reasonable access of the books, records and accounts of the Indemnitors. See Ex. A, ¶ 12.

34. Without full, complete and immediate access to the Indemnitors' books, records and other documents, Selective may be unable to determine the most effective means of otherwise minimizing its potential losses under the Bonds and pursuing its rights against the Indemnitors pursuant to the Indemnity Agreement.

35. By reason of the foregoing, Selective has suffered and will continue to suffer, injury and damage for which there is no adequate remedy at law.

**WHEREFORE**, Selective demands judgment against the Indemnitors, jointly and severally, for specific performance as follows:

(a) Specifically enforcing the Indemnity Agreement by preliminarily and permanently enjoining, ordering and directing the Indemnitors, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf, to immediately provide to Selective full and complete access to all of the Indemnitors' books, records, including electronic records similar to Quickbooks and other accounting software and other documents for inspection and copying;

(b) Requiring the Indemnitors to render to Selective a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest; and

(c) Awarding interest, costs of suit, attorneys' fees and such other and further relief as may be just and equitable.

## THIRD COUNT

### SPECIFIC PERFORMANCE OF THE INDEMNITY AGREEMENT BY COMPELLING THE DEFENDANTS TO DIRECT OBLIGEES TO REMIT CONTRACT BALANCES AND PROCEEDS TO SELECTIVE[1]

36. Selective repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

37. Under the terms of the Indemnity Agreement, the Indemnitors agreed, among other things, to cause, upon their default, all funds or proceeds from bonded contracts to be

---

[1] Prior to this application, JMC executed certain letters of direction as required by the Indemnity Agreement. However, JMC has not executed letters of direction for contracts that Selective issued the following bonds: B1207467 and B1209075. By this application, Selective is seeking an order compelling JMC to execute letters of direction for contracts that Selective issued bonds nos. B1207467 and B1209075. Selective reserves the right to require the Indemnitors to execute additional letters of direction for contracts that Selective bonded, if any.

deposited into trust accounts in favor of and for the benefit of laborers, materialmen, suppliers, subcontractors and Selective.

38. By reason of the foregoing breach of their bonded obligations and the Indemnity Agreement, the Indemnitors are required to direct the obligees on all contracts bonded by Selective to remit any and all future payments of contract funds to Selective.

**WHEREFORE**, Selective demands judgment against the Indemnitors, jointly and severally, for specific performance as follows:

(a) Ordering and directing the Indemnitors to execute letters of direction to the obligees on all contracts bonded by Selective, which directs the payment of all proceeds and contract balances due, or to become due, to JMC, in whole or in part, to Selective, who shall deposit such funds into a trust account controlled by Selective which funds shall be impressed with a trust in favor of and for the benefit of laborers, materialmen, suppliers, subcontractors and Selective;

(b) Ordering and directing the Indemnitors to immediately deliver any payments received from the obligees, as proceeds or contract balances due to creditors from the projects to Selective for deposit into the aforesaid trust account;

(c) Requiring the Indemnitors to render to Selective a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

(d) Awarding Selective such other and further relief as the court deems just, equitable and proper; and

(e) Awarding Selective reasonable attorneys' fees, costs of suit, interest, and any other relief that the Court deems just and proper.

## FOURTH COUNT

### CONTRACTUAL INDEMNIFICATION

39. Selective repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

40. Pursuant to the Indemnity Agreement, the Indemnitors agreed, jointly and severally, to ". . . exonerate, indemnify and save harmless [Selective] . . . from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional and trade fees . . . which [Selective] may sustain, incur . . ." by reason having issued the Bonds and/or enforcing the Indemnity Agreement. See Ex. A, ¶ 3.

41. Selective has demanded the Indemnitors to honor their obligations under the Indemnity Agreement to, among other things, indemnify and hold Selective harmless for any and all liability, loss, demand, fees and costs incurred and to be incurred by Selective by reason of having issued the Bonds.

42. Despite demand, the Indemnitors have failed and refused to honor their obligations under the Indemnity Agreement and have otherwise breached the Indemnity Agreement.

43. As a result of the Indemnitors' breach of the Indemnity Agreement, Selective has sustained damages, costs and expenses, and will continue to sustain damages, costs and expenses.

**WHEREFORE**, Selective demands that judgment be entered against the Indemnitors, jointly and severally, as follows:

(a) For contractual indemnification for all losses incurred and to be incurred by Selective, and any and all liability, loss, cost, expense, and attorneys' fees to be incurred by Selective, together with appropriate interest thereon;

(b) For declaratory relief, declaring the Indemnitors jointly and severally liable to Selective for all loss, liability, cost or expense to which Selective may be exposed or which it may sustain;

(c) For attorneys' fees and costs of suit; and

(d) For such other and further relief, legal or otherwise that this Court may deem just and proper.

## FIFTH COUNT

### *QUIA TIMET* RELIEF

44. Selective repeats each and every allegation set forth in the preceding paragraphs of its Verified Complaint as if set forth at length herein.

45. Selective anticipates that it may be required to make payments to various claimants to cure the defaults of JMC and the Indemnitors under the Bonds and the Indemnity Agreement.

46. The continued failure of the Indemnitors to place Selective with funds equal to the Collateral Demand and Reserve results in Selective's continuous and increasing risk of loss under the Bonds.

47. Selective also fears that unless the relief sought is granted, the Indemnitors will continue to liquidate and otherwise dissipate their assets thereby insuring that funds that ought to be applied to satisfy Selective's obligations under the Bonds and the Indemnitors' obligations under the Indemnity Agreement will not be available at the conclusion of this litigation.

**WHEREFORE**, Selective demands judgment against the Indemnitors, jointly and severally, as follows:

(a) Ordering and directing the Indemnitors to discharge any claims asserted against Selective in connection with the Bonds, including without limitation, the Payment Claims and to reimburse Selective for any outlays which it may have had to make in connection therewith;

(b) Ordering and directing the Indemnitors, and each of them, and their officers, agents, employees, attorneys and other persons acting on their behalf, to immediately deposit collateral in the amount of the Reserve set by Selective, $314,605.00;

(c) Directing, ordering, and adjudging that, pursuant to the common law doctrine of *quia timet*, the Indemnitors and their agents are restrained and enjoined from transferring, encumbering or otherwise disposing of and from concealing and secreting any of their property and assets, real, personal and mixed, whether jointly or solely owned, which might serve as collateral so as to secure Selective from liability herein until proof of record satisfactory to the court is presented to establish that all claims to which Selective is exposed have been liquidated and discharged;

(d) Requiring the Indemnitors to render to Selective a full and complete accounting of all assets owned by them or anyone or any of them in which they or any one of them may have an interest;

(e)   Requiring the Indemnitors to allow Selective full and complete access to all financial books, records, documents and accounts maintained by them or any one of them in which they may have an interest;

(f)   Awarding in favor of Selective, and against the Indemnitors, damages in the amount of all expenditures, and outlays made by Selective, including attorneys' fees, consultant's fees, litigation expenses, interest and court costs; and

(g)   Awarding Selective such other and further relief as the court deems just, equitable and proper.

> McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
> *Attorneys for Plaintiff,*
> Selective Insurance Company of America
>
> By: _____
> Louis A. Modugno, Esq.

Dated: May 24, 2019

## VERIFICATION

STATE OF NEW JERSEY   )
                      )   SS:
COUNTY OF SUSSEX      )

Jonathan Panico, being duly sworn, deposes and says:

    I am a Senior Bond Claims Representative, for Selective Insurance Company of America, the plaintiff in the within action, which is a corporation created under and by virtue of the laws of the State of New Jersey; that I have read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe to be true.

_____
Jonathan Panico

Sworn to me before this
2 4 day of May, 2019.

_____
Notary Public

**ROSEANN NALDI**
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 12619
MY COMMISSION EXPIRES OCT. 18, 2021